IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GREG KEY                                                                                          PLAINTIFF

v.                                   No. 4:09CV00658 JLH

HAYWARD FINKS, Individually,
and in his Official Capacity as a Captain
of the Little Rock Police Department;
WILLIE DAVIS, Individually,
and in his Official Capacity as a Sergeant of the
Little Rock Police Department; and
CITY OF LITTLE ROCK                                                                       DEFENDANTS

**OPINION AND ORDER**

The plaintiff Greg Key brings this action against the defendants pursuant to 42 U.S.C. § 1983, alleging that his supervisors at the Little Rock Police Department ("LRPD") violated his First Amendment, due process, and equal protection rights by verbally harassing and suspending him from work. Key also alleges that the defendants violated Arkansas's Civil Service Act and breached the terms of his employment contract with the City of Little Rock. The defendants have filed a motion for summary judgment asking the Court to dismiss the federal and state law claims. For the following reasons, the motion for summary judgment is granted.

**I.**

Greg Key is a Caucasian officer who has been employed with the LRPD since 1990. During the relevant time period, Key's direct supervisor was Sergeant Willie Davis, and his division commander was Captain Hayward Finks—both African Americans

On June 17, 2006, while on duty, Key encountered a vehicle that was loitering in a parking lot. Key stated that the driver, Thelma Bradley, became rude and belligerent when he asked her to leave. Key issued Ms. Bradley a citation for loitering. Subsequently, Ms. Bradley filed a complaint

with the LRPD's Internal Affairs Division alleging that Key was hostile and rude to her and used profanity when speaking to her. During an interview with Sergeant Davis, Key denied being rude or using profanity. Ms. Bradley submitted an audio tape of the conversation with Key, which she had recorded on her cell phone. Sergeant Davis listened to the tape and determined that Key had in fact used profanity with Ms. Bradley. Lieutenant Charles Speer, who also investigated the incident, found the sound quality of the tape too poor to determine whether Key used profanity, so he listened to a tape from a small recorder that Key wore while on duty with the patrol division and determined that "Key engaged in a loud argument with the complainant" and "utter[ed] at least one if not two curse words at the complainant." (Defs.' Mot. for S.J. Ex. A-6.) Both Davis and Speer completed supervisory evaluation forms in which they recommended that the complaint be sustained and that Key be afforded an administrative hearing. The file was forwarded to Captain Finks and Lieutenant Sidney Allen for review; Finks listened to Ms. Bradley's tape and determined that Key had used profanity. Both officers recommended that the complaint be sustained and that Key be afforded an administrative hearing.

On August 15, 2006, Chief of Police Stuart Thomas drafted a Notice of Intent informing Key that disciplinary action was being considered against him for alleged violations of two LRPD Rules and Regulations: (1) dereliction of duty, which includes "[u]se of loud, indecent, profane, or harsh language in the performance of official duties or in the presence of the public"; and (2) willful misrepresentation of a matter "before any court, grand jury, commission, official hearing or departmental hearing or investigation." (Defs.' Mot. for S.J. Ex. A-1, Nos. 1/4001.09, 1/8005.00.) Key requested an administrative hearing, and he was afforded an opportunity to review the investigative file and listen to the tape recording from Ms. Bradley's cell phone. At the hearing, which was conducted by Captain Finks, Key was given an opportunity to explain his side of the story

and did so. Following the hearing, Chief Thomas reviewed the recommendations, the file, and the transcript of the hearing and suspended Key for one day without pay.

On February 14, 2007, Officer Key was assigned to work a burglary detail in the midtown area of Little Rock. Sergeant Davis instructed Key to get a digital camera and bring it with him to the area where they were working. Officer Key retrieved the camera from his office, and then, instead of going directly to the midtown area, he went downtown to locate another officer who could show him how to use the camera. Sergeant Davis attempted to radio Officer Key but was unable to reach him. He finally contacted Key on his cell phone. Key alleges that Davis cursed and screamed at him over the phone. Key met Davis in a parking lot a few minutes later, and Key alleges that Davis continued cursing and screaming at him. At that point, Key said that he could not work for Davis and would not "sit here and be yelled at." Key indicated that he wanted to talk with someone with a higher rank than Davis. Key and Davis went to the downtown patrol office. At the office, Davis tried to talk to Key in the presence of Sergeant James Sloan, but Key said that he wanted to talk with a staff officer. Key stated that he would rather scrub toilets at midnight than work for Sergeant Davis. Davis contacted Captain Finks, who went to the office to talk to Key. Key told Finks that he could not and would not work with Sergeant Davis. Finks said that he considered relieving Key of duty that day, but did not do so because he wanted to discuss the situation with Lieutenant Susan Holland and Sergeant Davis.

On February 15, 2007, Captain Finks asked Key's unit to report for a lineup at 8:00 a.m. During the course of the meeting, Finks raised his voice and used profanity when expressing his displeasure at the conduct of some of the officers in the unit. Finks maintains that Officer Key made a groaning noise and looked away from him when he was talking. Key admits that he looked at the floor but does not remember making any sound. Finks asked if he was boring Key, to which Key

3

responded that he did not like the manner in which Finks was addressing the unit and did not think the unit deserved to be talked to in that manner. Finks dismissed Key from the meeting. Later that morning, Finks met with Key and Lieutenant Holland in his office and relieved Key from duty. According to Holland, at the meeting in Finks's office, Key "would never answer questions that were asked of him." (Defs.' Mot. for S.J. Ex. A-11.)

On Monday, February 19, 2007, Chief Thomas held a meeting with Officer Key. Thomas informed Key that he would have to be respectful of his supervisors and then allowed Key to return to duty. Sergeant Davis prepared a supervisory evaluation form recommending that Key be afforded an administrative hearing. Lieutenant Holland, Captain Finks, and Assistant Chief Carlos Corbin concurred with Davis's recommendation. Chief Thomas reviewed the documents submitted and issued a Notice of Intent, informing Key that disciplinary action was being considered against him for (1) showing disrespect to a supervisory officer, (2) failing or refusing to obey a lawful order, and (3) failing to be courteous to supervisors. (Defs.' Mot. for S.J. Ex. A-1, Nos. 1/4001.00, 1/4004.00, and 1/5006.00.) An administrative hearing was conducted on March 26, 2007, by Captain Finks. At the hearing, both Key and his attorney were given an opportunity to state for the record anything they felt should be considered. Key submitted a written statement, and after the hearing, Key's attorney requested that the officers who were present at the February 15 lineup be interviewed. The LRPD obtained written statements from the officers at the lineup and added them to the investigative file.[1] Sergeant Ann Hinton, Lieutenant Tanya Washington, Captain Dustin Robertson, and Assistant Chief Corbin reviewed the file, and each officer recommended that the violations be sustained and Key be suspended. On July 17, 2007, Chief Thomas suspended Key for two days without pay.

---

[1] Key contends that, prior to the issuance of the final disciplinary decision, he was not provided these written statements.

**II.**

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**III.**

The defendants are entitled to summary judgment on all of Key's claims. Key offers no new evidence in response to the defendants' motion; rather, he asks the Court to rely on two exhibits that

were submitted in response to an earlier motion for sanctions: eleven pages of the deposition testimony of Chief Thomas and a self-serving affidavit proffered by the plaintiff.[2] Attached to the plaintiff's response to the motion for summary judgment is a copy of the same affidavit. Neither of these documents establish a genuine issue of fact for trial.[3]

Key alleges that his procedural due process rights were violated because he was not allowed to appeal either of his suspensions to the city's Civil Service Commission and because he did not receive a copy of the written statements of the officers who attended the February 15 lineup until after Chief Thomas decided to suspend him. To prevail on a procedural due process claim, a plaintiff must establish that he had a protected property interest in employment and that he was deprived of that right without due process of the law. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985). Even though the plaintiff has a property interest in his employment with the LRPD,[4] that does not mean that he was necessarily denied due process when he was suspended for fewer than three days without the right of appeal. To determine what process is constitutionally due, courts balance three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally,

---

[2]"[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." *Gander Mtn. Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008).

[3]The plaintiff suggests that the standard for summary judgment is the same as the standard for sanctions. However, that is simply not the case. *See* Fed. R. Civ. P. 11, 56.

[4]Key had a property interest in his employment because he could only be suspended or terminated for cause. *See Bennett v. Watters*, 260 F.3d 925, 927 (8th Cir. 2001) ("A public employee has a property interest when there are 'contractual or statutory limitations on the employer's ability to terminate an employee,' such as a contractual right to be terminated only for cause.") (quoting *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994)).

> the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976). "[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Goss v. Lopez*, 419 U.S. 565, 578, 95 S. Ct. 729, 738, 42 L. Ed. 2d 725 (1975). In *Goss v. Lopez*, the Supreme Court considered the constitutionality of an Ohio statute that permitted school officials to suspend students for up to ten days without a hearing. The Court determined that at a minimum due process requires

> that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. The fundamental requisite of due process of law is the opportunity to be heard, a right that has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest. At the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing.

*Id.* at 579, 95 S. Ct. at 738 (internal citations omitted). Where, as here, the private interest is relatively small (a one-or-two-day suspension without pay), there is little risk of error in light of the lengthy disciplinary process already in place, and the government's interest in efficiency is relatively large, due process does not require an avenue for appeal or that the plaintiff be provided a copy of every piece of evidence against him prior to his suspension. *Click v. Bd. of Police Comm'rs*, 609 F. Supp. 1199, 1207 (D.C. Mo. 1985) ("[T]he Due Process Clause does not require [the right to appeal] when an officer is suspended for ten days or less."); *see also Loudermill*, 470 U.S. at 546, 105 S. Ct. at 1495 ("The essential requirements of due process . . . are notice and an opportunity to respond."); (Defs.' Mot. for S.J. Ex. A-2, p.211-12 (establishing procedures for notice and hearing, as well as an appeals process for termination or suspension of three or more calendar days).) In *Click v. Board of Police Commissioners*, which was decided just two months after *Loudermill*, a district

court in this circuit held, on facts similar to those in this case, that due process requires that a police officer receive " 1) oral or written notice of the charge; 2) an explanation of the basis for the charge; and 3) an opportunity to present his/her side of the story" before being suspended without pay. *Click*, 609 F. Supp. at 1206. "Usually notice of the charges should be given and an opportunity to be heard should be afforded before the suspension is imposed." *Id.*; *see also Herts v. Smith*, 345 F.3d 581, 587 (8th Cir. 2003) ("Due process generally requires that certain procedures be met; a plaintiff must receive adequate notice and the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotations omitted). Here, the plaintiff was afforded those procedures. Pursuant to the LRPD's Disciplinary Action Procedures,[5] prior to each suspension, the plaintiff was notified of the investigation and the reasons for it and was given a pre-suspension hearing at which he could respond to the charges against him. The supervisors in Key's chain of command reviewed the administrative hearing record and made recommendations as to the disposition of each charge and the appropriate disciplinary action. After reviewing the file and recommendations, Chief Thomas made the final decision to suspend Key.

The plaintiff does not cite any case that holds that procedural due process under these circumstances includes a right to appeal. Nor does the plaintiff provide support for his argument that he should have been given a copy of *every piece* of evidence relevant to his second suspension before the suspension was final. The plaintiff knew full well the nature of the allegations against him, as evidenced by the written statement he submitted at his March 2007 hearing, and he had an adequate

---

[5]Local government units may be sued directly for unconstitutional actions pursuant to 42 U.S.C. § 1983, but only if the unconstitutional actions were pursuant to an official policy of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

opportunity to respond to those allegations. (*See* Defs.' Mot. for S.J. Ex. A-16.) Therefore, the defendants are entitled to summary judgment on the plaintiff's procedural due process claims.

The defendants are also entitled to summary judgment on the plaintiff's substantive due process claims. "The 'core of the concept [of substantive due process is] protection against arbitrary action' by the government." *Putnam v. Keller*, 332 F.3d 541, 547 (8th Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). "To determine whether a violation of an individual's substantive due process rights has occurred, the question is whether the officials acted in an arbitrary or capricious manner, or so as to shock the conscience." *Herts*, 345 F.3d at 587. The court also may consider conduct that evinces a "deliberate indifference" to protected rights of the plaintiff. *Putnam*, 332 F.3d at 548. "[A]n official's conduct must generally be intended to inflict harm to be conscience shocking in the constitutional sense." *Hawkins v. Holloway*, 316 F.3d 777, 788 (8th Cir. 2003).

The manner in which the defendants behaved toward Key was not conscience-shocking; at most, Key was subjected to vulgar language and verbal threats, neither of which constitute a due process violation. *See King v. Olmstead Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) ("The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest."); *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992) ("Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim.");. Nor were the reasons for suspending Key trivial or wholly unsupported by any evidence. The LRPD had evidence from which it could conclude that, in June 2006, Key yelled at Ms. Bradley and used profane language in front of her, including two audio tapes of the incident—one provided by Ms. Bradley and one taken from the microphone that Key was wearing while on patrol. The LRPD also

had evidence to support its determination that, in February 2007, Key was insubordinate, disobedient, and disrespectful to Sergeant Davis and Captain Finks, including the testimony of Sergeant Sloan, who was present when Finks questioned Key at the downtown office on February 14; the report of Lieutenant Holland, who was present when Finks spoke to Key and Davis in Finks' office on February 15; Finks's written statement; and the supervisory evaluation forms of Sergeant Davis, Sergeant Hinton, and Lieutenant Washington. Because Key's suspensions were not wholly unsupported by evidence, and because Key offers no evidence of other conscience-shocking behavior, the defendants are entitled to summary judgment on Key's substantive due process claims.[6]

The defendants are also entitled to summary judgment on Key's equal protection claim. Key alleges that he was subjected to a hostile work environment on account of his race. To establish a prima facie case for a hostile work environment, a plaintiff must prove: (1) that he was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and membership in the group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt action. *Sanders v. Lee Co. Sch. Dist. No. 1*, No. 2:08CV00219 JLH, 2010 WL 358529, at *6 (E.D. Ark. Jan. 22, 2010). To affect a term, condition, or privilege of employment, the harassment must be " 'sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment.' " *Moylan v. Maries Cnty.*, 792 F.2d 746, 749 (8th Cir. 1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). In determining whether conduct was sufficiently severe or pervasive, a district court must consider all

---

[6]Even if there was conscience-shocking behavior, the defendants correctly point out that a municipality may only be held liable if one of its customs or policies caused the violation. *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036.

the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998). Given this standard, the conduct that Key complains of does not rise to the level of a constitutional violation. Key alleges that he was subject to verbal abuse and harassment on February 14, 2007, at the hands of Sergeant Davis, and on February 15, 2007, at the hands of Captain Finks. Although the officers may have yelled at Key and used profanity, the evidence shows that nothing more than two isolated incidences involving, at most, "mere offensive utterance[s]." "[C]onduct must be *extreme* to amount to a change in the terms and conditions of employment." *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 966 (8th Cir. 1999) (emphasis added). "More than a few isolated incidents are required." *Id.* at 967. The conduct of Davis and Finks does not rise to the level of severity required to sustain a hostile work environment claim.

The Court also agrees with the defendants' argument that Key lacks standing to assert a First Amendment claim against the city on behalf of others. Key alleges that Captain Finks' actions were "in retaliation for a citizen's exercise of first amendment rights on matters of public importance, specifically, citizens' who asked that Plaintiff Key be retained in the downtown COPP squad rather than be transferred to another assignment." (Compl. ¶ 14.) "As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties." *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). Key offers no evidence to suggest that an exception to that general rule is warranted here.

Finally, the defendants are entitled to summary judgment on Key's state law claims. Key alleges in his complaint that the LRPD violated the Arkansas Civil Service Act and breached its contract with Key by suspending him for fewer than three days without a post-deprivation hearing. The Arkansas Civil Service Act instructs civil service commissioners to prescribe rules and regulations providing for suspension for not more than thirty days. Ark. Code Ann. § 14-51-301(b)(10)(A) (2009). General Order 211, issued pursuant to this instruction, requires the Chief of Police to have just cause for suspending an employee. (Def.'s Ex. A-2, p.211-2.) The right to appeal is only guaranteed if an employee is dismissed, demoted, or suspended for three or more calendar days. (*Id.* p.211-12.) The defendants have provided sufficient evidence to indicate that both of the plaintiff's suspensions were for cause and otherwise consistent with the terms of the Arkansas Civil Service Act and the LRPD's Rules and Regulations. Key offers no evidence to the contrary. As a result, summary judgment is appropriate as to the state law claims.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is GRANTED. Document #22.

IT IS SO ORDERED this 1st day of September, 2010.

J. Leon Holmes
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE